UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

| | |
|---|---|
| LISA SILJANOVSKI, | : |
| Plaintiff, | : Case No._____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **THE FEDERAL SECURITIES LAWS** |
| SOLITON, INC., WALTER V. KLEMP, | : |
| BRADLEY HAUSER, CHRISTOPHER | : JURY TRIAL DEMANDED |
| CAPELLI, JONATHAN P. FOSTER, | : |
| DANIKA HARRISON, NIQUETTE HUNT, | : |
| and MICHAEL KAMINER, | : |
| Defendants. | : |

------------------------------------------------------

Plaintiff Lisa Siljanovski ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action against Soliton, Inc. ("Soliton" or the "Company") and the members of Soliton's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to be acquired by Allergan Aesthetics ("Allergan"), an AbbVie Inc. ("AbbVie") company through AbbVie's subsidiary Scout Merger Sub, Inc. (the "Proposed Transaction").

2.     On May 8, 2021, Soliton and Allergan entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Soliton shareholders will receive $22.60 in cash for each share of Soliton common stock they own.

3.     On June 15, 2021, Soliton filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC which omits and/or misrepresents material information concerning the Proposed Transaction.  The failure to adequately disclose such material information renders the Proxy Statement false and misleading.

4.     The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Soliton's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8.    Plaintiff is, and has been continuously throughout at all times relevant hereto, the owner of Soliton common stock.

9.    Defendant Soliton is a Delaware corporation, with its principal executive offices located at 5304 Ashbrook Drive, Houston, Texas 77081.  The Company's common stock trades on the Nasdaq Capital Market under the ticker symbol "SOLY."

10.    Defendant Walter V. Klemp is, and has been at all relevant times, a co-founder, Executive Chairman and a director of the Company.

11.    Defendant Bradley Hauser is, and has been at all relevant times, President and Chief Executive Officer of the Company.

12.    Defendant Christopher Capelli is, and has been at all relevant times, a co-founder, Vice Chairman of the Board, Chief Science Officer, and a director of the Company.

13.    Defendant Jonathan P. Foster is, and has been at all relevant times, a director of the Company.

14.    Defendant Danika Harrison is, and has been at all relevant times, a director of the Company.

15.    Defendant Niquette Hunt is, and has been at all relevant times, a director of the Company.

16.     Defendant Michael Kaminer is, and has been at all relevant times, a director of the Company.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Company Background

18.     Soliton is a medical device company with a novel and proprietary platform technology licensed from The University of Texas M.D. Anderson Cancer Center.  The Company is focused on developing and commercializing products utilizing its acoustic shockwave technology platform referred to as Rapid Acoustic Pulse ("RAP").  Soliton is a pre-revenue stage company with its first product, RESONIC, the brand name for its RAP device, preparing for launch for the removal of tattoos and the reduction of cellulite.

### The Proposed Transaction

19.     On May 10, 2021, Soliton and AbbVie issued a joint press release announcing the Proposed Transaction stating, in pertinent part:

> IRVINE, Calif. and HOUSTON, May 10, 2021 -- Allergan Aesthetics, an AbbVie company (NYSE: ABBV) and Soliton (NASDAQ: SOLY) today announced a definitive agreement under which Allergan Aesthetics will acquire Soliton and RESONIC™, its Rapid Acoustic Pulse device which recently received U.S. Food and Drug Administration (FDA) 510(k) clearance and is a non-invasive treatment for the short-term improvement in the appearance of cellulite. The acquisition of Soliton expands and complements Allergan Aesthetics' Body Contouring treatment portfolio which includes CoolSculpting® Elite.
>
> The novel platform technology uses non-invasive rapid, high-frequency sound waves to disrupt targeted cellular structures and connective tissue, physically impacting the fibrous septae beneath the skin that contribute to the dimpled appearance of cellulite. In clinical trial data submitted to the FDA, after a single treatment session RESONIC™ demonstrated significant improvement and strong patient satisfaction with 92.9 percent of subjects agreeing or strongly agreeing their cellulite appeared improved.

"There is a huge unmet need to address cellulite and effective treatments have been elusive and frustrating for consumers," said Carrie Strom, President, Global Allergan Aesthetics and Senior Vice President, AbbVie. "Soliton's technology offers a new, completely non-invasive approach with clinically-proven results to reduce the appearance of cellulite with no patient downtime. The addition of this technology complements Allergan Aesthetics' portfolio of body contouring treatments. Health care providers will now have another option to address consumers' aesthetic concerns."

"Allergan Aesthetics' brand recognition, global footprint, track record and commitment to developing best-in-class aesthetic treatments makes the Company ideally suited to maximize the commercial potential of the RESONICTM rapid acoustic pulse technology," said Walter Klemp, Executive Chairman, Soliton. "I am proud of the passion and accomplishments of the Soliton team and thankful for the ongoing support of our investors which have culminated in this transaction. We look forward to working with Allergan Aesthetics to ensure a successful completion of this transaction."

Under the terms of the transaction, Allergan Aesthetics will pay $22.60 per share in cash for each outstanding share of Soliton. Soliton's enterprise value for the transaction is approximately $550 million and was approved by the Boards of Directors of both companies. The transaction is subject to customary closing conditions, including clearance by the U.S. antitrust authorities under the Hart-Scott-Rodino Act and approval of Soliton's shareholders. Guggenheim Securities served as financial advisor to Soliton and Hogan Lovells served as legal counsel to Soliton.

RESONICTM has also received FDA 510(k) clearance for use in conjunction with laser for tattoo removal and has demonstrated clinical results in fibrotic scars.

**The Proxy Statement Materially Misleads Soliton Stockholders by Omitting Material Information**

20.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Soliton's stockholders. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information.

21.     *First*, the Proxy Statement omits material information regarding Company management's financial projections.

22.     For example, the Proxy Statement fails to disclose: (i) the updated projections that Soliton management was preparing in the late fall of 2020 (*see* Proxy Statement at 29); (ii) the updated projections that Soliton management was preparing in early March 2021 that were reviewed at the March 11, 2021 Special Committee meeting (*see id.* at 31); and (iii) the assumptions underlying each set of updated projections.

23.     The Proxy Statement also fails to disclose all line items underlying the calculation of unlevered free cash flow.

24.     ***Second***, the Proxy Statement omits material information regarding Guggenheim Securities, LLC's ("Guggenheim") financial analyses.

25.     With respect to Guggenheim's *Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose: (i) the Company's unlevered free cash flow for year 2031 for the Base Scenario and Moderate Growth Scenario and year 2030 for the Outperform Scenario; (ii) the terminal value of the Company under each scenario; and (iii) the individual inputs and assumptions underlying the discount rate range of 11.55% to 14.30%.

26.     With respect to Guggenheim's *Discounted Future Value Analysis Based on Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate of 12.0% to 14.0%; and (ii) Guggenheim's basis for applying multiples of 7.0x to 10.0x.

27.     With respect to Guggenheim's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the objective selection criteria used to select the companies; and (ii) Guggenheim's basis for applying multiples of 6.5x to 8.5x.

28.     With respect to Guggenheim's *Selected Precedent Merger and Acquisition Transactions Analysis*, the Proxy Statement fails to disclose: (i) Guggenheim's basis for applying multiples of 7.0x to 10.0x; and (ii) the closing dates of the transactions.

29.     With respect to Guggenheim's *Wall Street Equity Research Analyst Stock Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

30.     **Third**, the Proxy Statement omits material information regarding Guggenheim's potential conflicts of interest.

31.     For example, the Proxy Statement fails to disclose whether Guggenheim has performed any services for and received any fees from the Company's largest shareholder, Remeditex Ventures LLC, which owns 42.7% of the Company's common stock.

32.     **Fourth**, the Proxy Statement omits material information regarding Company insiders' potential conflicts of interest.

33.     The Proxy Statement fails to disclose whether any of Soliton's executive officers or directors have secured employment upon closing of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between AbbVie and Soliton's executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of AbbVie's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the combined company.

34.     In sum, the omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading, in contravention of the Exchange Act.

Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

35.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

36.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

37.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Soliton management's financial projections, Guggenheim's financial analyses, and Guggenheim's and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

38.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

39.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

40.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations
### of Section 20(a) of the Exchange Act

41.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Soliton within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of Soliton, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Soliton stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against defendants as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  July 9, 2021                                    **WEISSLAW LLP**

                                                        By _____
                                                        Richard A. Acocelli
                                                        1500 Broadway, 16th Floor
                                                        New York, New York 10036
                                                        Tel: (212) 682-3025
                                                        Fax: (212) 682-3010
                                                        Email: racocelli@weisslawllp.com

                                                        *Attorneys for Plaintiff*

**OF COUNSEL:**

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
-and-
212 W. Spring Valley Road
Richardson, Texas 75081

*Attorneys for Plaintiff*